IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES FRED GORDON and DANELLE DECEW,<br><br>Defendants. | **MEMORANDUM DECISION AND REPORT & RECOMMENDATION**<br><br>Case No: 2:04-CR-688 DB<br><br>District Judge Dee Benson<br><br>Magistrate Judge David Nuffer |

Defendant James Fred Gordon filed two motions to suppress evidence seized during a search of his person at the time of his arrest on October 1, 2004.[1] After an evidentiary hearing, the magistrate judge[2] concludes that because the search was reasonable under the Fourth Amendment, the motions should be denied.

**FACTS**

On September 30, 2004, Officer Michael Ikemiyashiro of the Sandy City police received a phone call from West Jordan Police Detective Lance Swanson. The detective informed Officer Ikemiyashiro that he had learned from a confidential source that Defendant Gordon was staying at a hotel in Sandy City. The confidential source stated that Gordon was a member of the Silent

---

[1] Docket no. 228, filed March 20, 2008; docket no. 258, filed June 17, 2008. The second motion to suppress is actually a memorandum in support of the first motion to suppress. It was docketed as a motion to suppress because its caption labels it as a motion, rather than a supporting memorandum.

[2] The case was referred to the magistrate judge under 28 U.S.C. § 636(b)(1)(B). (Docket no. 237, filed April 15, 2008.)

Aryan Warriors, a prison gang, and was known to carry firearms.  He also stated that Gordon would be in possession of methamphetamine, which he usually concealed in his crotch or groin area.[3]

After receiving this information, Officer Ikemiyashiro ran a records check and discovered that Gordon had an extensive criminal history including twenty-nine arrests, fourteen of which were drug-related.  Officer Ikemiyashiro then located Gordon's car at the motel based on a description of the car provided by the confidential source.[4]

About 1:30 in the morning of October 1, 2004, Officer Ikemiyashiro observed Gordon leave the motel in his car.  Officer Ikemiyashiro then called for additional cars to assist him in a traffic stop.  After Sergeant Todd Brooks responded, Officer Ikemiyashiro stopped Gordon as he was driving north from Sandy on I-15.  By the time of the stop, Officer Ikemiyashiro had received information that Gordon had an outstanding warrant for his arrest.  In addition, Detective Swanson had told him that the DEA had probable cause for new felony charges against Gordon.[5]

After the stop, Officer Ikemiyashiro placed Gordon under arrest.  Before putting Gordon in handcuffs, Officer Ikemiyashiro conducted a "Terry frisk" to search for weapons.  During the Terry frisk, Officer Ikemiyashiro noticed a bulge below Gordon's waistband, but above his pubic bone.  The bulge did not feel like a weapon, however.  After placing him in handcuffs,

---

[3]Transcript of the May 27, 2008 hearing at 9-10, 12-13, docket no. 259, filed June 19, 2008.

[4]*Id*. at 10.

[5]*Id*. at 11-12.

Ikemiyashiro searched Gordon's person and his pockets. Ikemiyashiro then conducted a search of Gordon's car which yielded some paraphernalia, but no methamphetamine.[6]

Officer Ikemiyashiro then asked Gordon about the bulge in his pants. Gordon indicated that it was nothing, and refused to allow Officer Ikemiyashiro to search his groin area.[7] Officer Ikemiyashiro then put on some cotton and leather work gloves, undid Gordon's belt, pulled his denim jeans away from his body and looked down. Officer Ikemiyashiro could see that Gordon was wearing some sort of shorts underneath his jeans and, under the shorts, bikini-type underwear. Officer Ikemiyashiro testified that after pulling back the jeans, shorts, and bikini underwear, he could see a clear plastic bag containing a white crystalline substance. Officer Ikemiyashiro testfied that he then unzipped Gordon's pants, and removed the bag of methamphetamine which was sitting on top of Gordon's genitals.[8] According to Officer Ikemiyashiro, Gordon's pants were not pulled down during the search.[9] Officer Ikemiyashiro further testified that the search took place on the northbound side of I-15 on the passenger side of one of the police vehicles.[10]

Defendant Gordon's testimony differed somewhat from that of Officer Ikemiyashiro. He stated that when the officer told him he was going to go inside his pants, Gordon responded that

---

[6]*Id.* at 12-13.

[7]*Id.* at 13.

[8]*Id.* at 13, 16-19.

[9]*Id.* at 14.

[10]*Id.* at 20.

he would not allow it.  According to Gordon, Officer Ikemiyashiro then threatened physical force, and Gordon acquiesced.[11]

Gordon testified that he was wearing tight-fitting blue Levis with a button top and a zipper.  Gordon stated that Officer Ikemiyashiro unbuttoned and unzipped his Levis, and saw that he was wearing underwear.[12]  Officer Ikemiyashiro then pulled Gordon's Levis down over his hips, but not all the way to his knees.[13]  Next, Officer Ikemiyashiro pulled Gordon's boxer shorts away from his body.  He could then see that Gordon was also wearing bikini briefs under the boxers.  Officer Ikemiyashiro pulled the boxers down to where Gordon's Levis were.  He then pulled the bikini briefs down over Gordon's genitals and grabbed the package of drugs.  Gordon stated that the package was underneath his genitals, not above them, as Officer Ikemiyashiro had testified.[14]  Gordon testified that he placed the drugs under his genitals when the officer pulled him over.[15]

## DISCUSSION

"The Fourth Amendment  protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[16]  However, "[t]he

---

[11] *Id.* at 26.

[12] *Id.* at 27.

[13] *Id.* at 27-28.

[14] *Id.* at 28.

[15] *Id.* at 28-29.

[16] ; *United States v. Guerrero-Espinoza*, 462 F.3d 1302, 1306 (10th Cir. 2006)(quoting *United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005)).

Fourth Amendment prohibits only *unreasonable* searches."[17]  Supreme Court precedent provides that searches conducted incident to a lawful arrest are reasonable under the Fourth Amendment.[18] However, even a search incident to an arrest is subject to reasonableness requirements.[19]

The Supreme Court has stated that the test of reasonableness under the Fourth Amendment "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails."[20]  Factors to be considered include "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."[21]  After considering these factors, the court concludes that the search of Gordon was reasonable.

There is no dispute in this case that Gordon was arrested pursuant to a valid arrest warrant, and the search was conducted incident to the arrest.  Thus, the only issue is whether the search was reasonable.  Gordon argues that the search of his person was not reasonable because it was carried out on the side of a freeway with his body, naked from the waist down, fully exposed to the public.[22]

A dispute of fact exists regarding the scope of the search and the manner in which it was conducted.  At the hearing, Officer Ikemiyashiro testified that he merely pulled Gordon's

---

[17] *Bell v. Wolfish*, 441 U.S. 520, 558 (1979).

[18] *United States v. Edwards*, 415 U.S. 800, 802-03 & n.3 (1974); *United States v. Robinson*, 414 US 218, 235 (1973).

[19] *Illinois v. Lafayette*, 462 U.S. 640, 645 (1983).

[20] *Bell*, 441 U.S. at 559.

[21] *Id*.

[22] Defendant's Motion to Suppress Evidence at 4, docket no. 258, filed June 17, 2008.

clothing away from his body and retrieved the package containing the drugs which was sitting on top of Gordon's genitals.  Gordon, on the other hand, testified that the layers of clothing were pulled down over his hips exposing the drugs which were concealed underneath his genitals.  The court resolves the factual issues in favor of the officer on both these points; however, even under Gordon's version of the facts, the search was reasonable under the Fourth Amendment.

With regard to the scope of the search, the Tenth Circuit has observed that "a stripsearch is an invasion of personal rights of the first magnitude."[23]  The court notes, however, that although the search at issue was intrusive, it did not amount to a full-scale strip search in which the defendant was required to completely disrobe and expose his naked body for inspection.  Rather, under either version of the facts, the scope of the search at issue was quite limited.  Officer Ikemiyashiro simply pulled the clothing out of the way as necessary to see the drugs and remove the contraband from Gordon's clothing.[24]

Regarding justification, there is no question that the officers were justified in searching Gordon's person.  Officer Ikemiyashiro had received information that Gordon often carried drugs in the area of his groin.  Further, when he conducted the pat-down search, he felt a bulge there that was not normal.[25]  Based on this evidence, Officer Ikemiyashiro had probable cause to

---

[23] *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008)(quoting *Chapman v. Nichols*, 989 F.2d 393, 395 (10th Cir. 1993)).

[24] *See United States v. Williams*, 477 F.3d 974, 977 (8th Cir. 2007)(characterizing a similar search as a "reach-in" search), *cert. denied*, 128 S. Ct. 237 (2007).

[25] Transcript at 12.

believe that Gordon had the illegal drugs hidden in his groin area.[26] It was therefore reasonable for him to search this area of Gordon's person and retrieve the drugs.

Gordon concedes that the officers "could have legally performed a highly intrusive search of his person in private at the detention facility."[27] He argues, however, that because he had already been patted down for weapons, and his hands were cuffed behind his back, there was no danger that he could obtain a weapon. Thus, in Gordon's view, the search should have been conducted only after he was taken to jail. However, "the existence of 'less intrusive means' does not, by itself, make a search unreasonable."[28] One purpose of a search incident to an arrest is to preserve the evidence that may be in the defendant's possession.[29] As one court has stated, "[w]hile the potential for destruction of evidence is diminished when a suspect is in custody, it is not completely eliminated, and it was not unreasonable for the officers to assume the initiative by seizing the contraband that [the defendant] secreted in his underwear."[30]

Gordon argues that the search was conducted in an unreasonable location because it occurred along the side of the freeway. In support of this position, Gordon relies on Supreme

---

[26]*Archuleta*, 523 F.3d at 1284 (stating that a primary concern in determining the reasonableness of a strip search is whether the officer has reasonable suspicion that the detainee has concealed weapons, drugs, or contraband).

[27]Defendant's Motion to Suppress Evidence, docket no. 258, at 4-5.

[28]*Williams*, 477 F.3d at 976 (quoting *United States v. Sharpe*, 470 U.S. 675, 687 (1985)).

[29]*Cupp v. Murphy*, 412 U.S. 291, 295 (1973)(stating that "when an arrest is made, it is reasonable for a police officer to expect the arrestee to use any weapons he may have and to attempt to destroy any incriminating evidence then in his possession."); *United States v. Robinson*, 414 US 218, 226 (1973)(stating that in addition to searching for weapons "it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.")(quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)).

[30]*Williams*, 477 F.3d at 976.

Court dicta that a public strip search would be highly intrusive.[31]  Gordon, however, was not subjected to a public strip search.  The court agrees with the Eighth Circuit that this type of reach-in search is permissible "if police take steps commensurate with the circumstances to diminish the potential invasion of the suspect's privacy."[32]  In this case, the search was conducted in the dark at 1:30 in the morning on the shoulder of the freeway on the passenger side of the car, where Gordon was shielded from public view.  Under these circumstances the court finds that it would have been virtually impossible for members of the general public to have viewed the private areas of Gordon's body.  Several courts have upheld similar searches.[33]

---

[31]*Lafayette*, 462 U.S. at 645 (stating that "the interests supporting a search incident to arrest would hardly justify disrobing an arrestee on the street.").

[32]*Williams*, 477 F.3d at 977.

[33]*See, e.g., Williams*, 477 F.3d at 977-78 (officer reached into defendant's underwear and removed crack and powder cocaine near his genitals during search conducted in partially secluded parking lot); *United States v. Ashley*, 37 F.3d 678, 682 (D.C. Cir. 1994)(police followed suspect to the side of a bus station, and stood in front of him during the search); *Jenkins v. State*, 978 So. 2d 116, 125-28 (Fla. 2008)(officer pulled defendant's boxer shorts away from his body and removed crack cocaine from his buttock area during search at gas station); *State v. Jenkins*, 842 A.2d 1148, 1158 (Conn. App. 2004)(seizure of drugs from defendant's underwear upheld where search was conducted at side of restaurant away from street and public view); *State v. Smith*, 464 S.E. 2d 45 (N.C. 1995)(police removed cocaine from underneath suspect's scrotum during search on public street at 1:30 a.m., and officer shielded defendant from public view with car door and by positioning himself between defendant and car door)(for facts of this case, see 454 S.E. 2d 680 (N.C. App. 1995)).

## RECOMMENDATION

The search conducted incident to Gordon's arrest was reasonable.  Accordingly, Gordon's motions to suppress should be denied.[34]

Copies of this Report and Recommendation are being mailed to the parties, who are hereby notified that they have the right to object to the Report and Recommendation.  The parties are further notified that they must file any objections to the Report and Recommendation with the clerk of the district court, pursuant to 28 U.S.C. § 636(b), within ten (10) days after receiving it.  Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

July 21, 2008.

                                      BY THE COURT:

                                      David Nuffer
                                      U.S. Magistrate Judge

---

[34]Docket no. 228, filed March 20, 2008; docket no. 258, filed June 17, 2008.